## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| CYNTHIA ALEXIS<br>438 Hillside Avenue<br>Lancaster, PA 17603<br><br>           Plaintiff,<br><br>           v.<br><br>CLARK ASSOCIATES, INC.<br>2205 Old Philadelphia Pike<br>Lancaster, PA 17602<br><br>           Defendant. | CIVIL NO.: _____<br><br>**JURY TRIAL DEMANDED** |

---

## **COMPLAINT – CIVIL ACTION**

Plaintiff, Cynthia Alexis ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Clark Associates, Inc., ("Defendant"), alleges as follows:

## **INTRODUCTION**

1. Plaintiff initiates this action contending Defendant violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* Specifically, Plaintiff contends that Defendant subjected her to sexual harassment of a severe or pervasive nature resulting in a hostile and offensive work environment because of sex, and terminated Plaintiff from her employment in retaliation as of her reports of the same, in violation of Title VII and the PHRA.

## **PARTIES**

2. Plaintiff Cynthia Alexis is a citizen of the United States and Pennsylvania and currently maintains a residence at 438 Hillside Avenue, Lancaster, PA 17603.

3. Defendant Clark Associates, Inc. is organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business located at 2205 Old Philadelphia Pike, Lancaster, PA 17602.

## JURISDICTION AND VENUE

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about January 20, 2019, Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC").

6. On or about June 07, 2019, Plaintiff filed an amended charge of discrimination with the PHRC which was dually filed with the United States Equal Employment Opportunity Commission ("EEOC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 17F-2019-60674. Plaintiff's EEOC was filed within one hundred and eighty (180) days of the unlawful employment practice.

7. By correspondence dated July 11, 2022, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

8. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant maintains a business location within this judicial district, is currently doing business therein, and the events giving rise to these claims took place within this judicial district.

## FACTUAL ALLEGATIONS

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. On or about September 4, 2014, Plaintiff began her employment with Defendant as a Returns Coordinator.

14. At all times material hereto, Plaintiff performed her job satisfactorily, receiving positive feedback from management.

15. Beginning from on or about February 21, 2018, Plaintiff was subjected to severe or pervasive sexual harassment by Defendant's Returns Manager, Thomas Cranes ("Mr. Cranes").

16. By way of example, on or about February 21, 2018, Mr. Cranes unwelcomingly approached Plaintiff with sexually charged motives and asked if Plaintiff "liked him" and stated, "I want to have the same relationship you have with Patrick."

17. Plaintiff responded by asking, "where is this coming from?"

18. At no point did Plaintiff ever have any personal relationship with Patrick outside of work and/or was ever subjected to any sexual advancements by Patrick.

19. Shortly thereafter, on or about March 11, 2018, Plaintiff informed Mr. Cranes that she liked her personal space and requested that she be allowed to work with her office door shut.

20. However, and even after being made aware of the aforementioned, Plaintiff would see Mr. Cranes staring at her through her office door and/or window.

21. Plaintiff informed and/or complained to Mr. Cranes, specifically telling him that his unwelcome staring made her feel uncomfortable and to please stop.

22. Furthermore, and throughout the same time period as the aforementioned, Mr. Cranes would touch and deliberately grab things from Plaintiff's hair.

23. Again, Plaintiff informed and/or complained to Mr. Cranes, specifically telling him that his unwelcome touching made her feel uncomfortable and to please stop.

24. On or about March 11, 2018, Defendant's Operations Manager, Adam Leishman ("Mr. Leishman") stated to Plaintiff that she did not seem happy at work.

25. In response, Plaintiff reported to Mr. Leishman Mr. Cranes' harassment, detailing the comments Mr. Cranes made, the unwelcome staring, the unwelcome touching, and the fact that Mr. Cranes was making Plaintiff feel uncomfortable in the workplace.

26. Mr. Leishman replied, stating, Mr. Cranes "didn't mean anything by it."

27. Defendant failed to take any remedial action against Mr. Cranes' harassment, despite Plaintiff's good-faith reports of the same.

28. As a result, Mr. Cranes' harassment continued.

29. In or around late March, 2018, Mr. Cranes began searching though Plaintiff's social media profiles and stated to Plaintiff, "I like your pictures online."

30. Plaintiff replied, telling Mr. Cranes, "I'd prefer if you didn't go through my Facebook profile."

31. By way of further example, in or around April, 2018, Plaintiff was showing coworkers photos on her cell phone.

32. Mr. Cranes approached Plaintiff and moved uncomfortably close to her.

33. Mr. Cranes asked Plaintiff to show him the photos, while stating, "You smell good."

34. Mr. Cranes further stated, while standing uncomfortably close to Plaintiff, "My brother's wife is black."

35. Plaintiff as an African-American female.

36. Plaintiff asked Mr. Cranes to stop and told him that he is "making things worse."

37. Mr. Cranes proceeded to show Plaintiff photos of his brother's African-American wife.

38. Mr. Cranes then replied, stating facetiously, "I'm digging a deeper hole, aren't I?"

39. In or around September, 2018, Plaintiff was given her yearly review by Mr. Cranes.

40. During their meeting, Mr. Cranes stated to Plaintiff, "The other employees don't dress as nice as you."

41. On several occasions, Mr. Cranes would approach Plaintiff, tell her that he was cold, and invasively put his hands on Plaintiff's neck, while stating, *inter alia*, comments such as "Keep me warm."

42. Plaintiff unequivocally rejected the unwelcome touching and remarks.

43. Furthermore, Plaintiff told Mr. Cranes that he could use her space heater in order to prevent Mr. Cranes from further touching her.

44. Despite this, Mr. Cranes continued to make unwelcome remarks and continued to put his hands on Plaintiff, including, but not limited to, on Plaintiff's neck and hair.

45. In notably close temporal proximity to Plaintiff unequivocally rejecting Mr. Cranes' sexual advances and telling Mr. Cranes to stop touching her, Plaintiff was suddenly and unexpectedly put on a Performance Improvement Plan ("PIP").

46. Plaintiff was put on the aforementioned PIP by Mr. Cranes.

47. Mr. Cranes specifically told Plaintiff that he was putting her on a PIP because he "wanted a better personal relationship."

48. Subsequent to being placed on a PIP by Mr. Cranes, Mr. Cranes' sexual harassment continued.

49. On or about January 10, 2019, Plaintiff was unexpectedly terminated from her employment by Mr. Cranes and Mr. Leishman.

50. Plaintiff was told by Mr. Cranes and Mr. Leishman that the specific reasons for her termination was because she was "no longer a good culture fit" and because "people's perception means everything."

51. Defendant's conduct was sufficiently severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, and which interfered with the ability for Plaintiff to do her job.

52. Plaintiff made good-faith complaints to Defendant to stop the foregoing sexually charged behavior. However, Defendant failed to take appropriate remedial action and in fact retaliated against Plaintiff by terminating her employment.

53. Accordingly, based on the foregoing, Plaintiff believes and therefore avers that her termination was pretextual and that she was terminated because of her sex (female), the severe, ongoing, and pervasive harassment to which she was subjected to, and in retaliation for her good-faith reports of sexual harassment in connection thereto, in violation of Title VII and the PHRA.

54. Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's protected rights.

55. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion

benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

### COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e, *et seq.*
### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RETALIATION

56. Paragraphs 1 through 55 are hereby incorporated by reference as though the same were fully set forth at length herein.

57. Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

58. Plaintiff is female and is therefore a member of a protected class under Title VII.

59. Defendant permitted and/or allowed to exist a hostile work environment because of sex as described above.

60. Defendant knew or should have known of the harassment Plaintiff experienced, but failed to act to prevent and/or remedy the harassment.

61. Plaintiff's internal complaints to Defendant regarding sexual harassment/sex discrimination constituted protected activity within the meaning of Title VII.

62. Plaintiff was retaliated against for engaging in protected activity under Title VII as described above.

63. The sexually and retaliatory hostile work environment to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance.

64. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

65. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

b) Compensatory, punitive and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951,** *et seq.*
**SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RETALIATION**

66. Paragraphs 1 through 65 are hereby incorporated by reference, as though the same were fully set forth at length herein.

67. The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff because of her sex.

68. Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

69. Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and compensation, personal humiliation, emotional distress, embarrassment, loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay loss of health benefits, and raises in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Compensatory, punitive, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton and/or malicious conduct;

c) Plaintiff's cost, disbursements, and attorney's fees incurred in prosecuting this action;

d) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                           Respectfully submitted,

                           **MURPHY LAW GROUP, LLC**

By: */s/ Andrew J. Schreiber*
      Andrew J. Schreiber, Esquire
      Michael Murphy, Esquire
      Eight Penn Center, Suite 2000
      1628 John F. Kennedy Blvd.
      Philadelphia, PA 19103
      TEL: 267-273-1054
      FAX: 215-525-0210
      aschreiber@phillyemploymentlawyer.com
      murphy@phillyemploymentlawyer.com
      *Attorneys for Plaintiff*

**Dated:** August 8, 2022

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation